IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | | |
|---|---|---|
| A.S., a Minor, by her Father and Mother, and Next Friends, DAN AND JANN STRUTZENBERG; DAN STRUTZENBERG, Individually; JANN STRUTZENBERG, Individually, | ) ) ) ) ) | Case No. 1:14-cv-00035-SMR-HCA |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TREYNOR COMMUNITY SCHOOL DISTRICT, TIM NAVARA, KEVIN ELWOOD, | ) ) ) | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS |
| | ) | |
| Defendants. | ) | |

"[E]ducation is perhaps the most important function of state and local governments." *Goss v. Lopez*, 419 U.S. 565, 576 (1975) (citing *Brown v. Board of Education*, 347 U.S. 483, 493 (1954)). This suit stems from a student-on-student sexual assault on school grounds.

Four motions to dismiss are before the Court. The final motion became ripe on June 3, 2015, and no hearing is necessary on the matter. For the reasons outlined below, the motions are GRANTED in part and DENIED in part.

## I. BACKGROUND

### A. *Two Complaints*

As a preliminary matter, the Court notes Plaintiffs moved to amend their Complaint after some of Defendants' pre-answer Rule 12(b) motions[1] were fully ripe.  [*See* ECF No. 13].  In their First Amended Complaint, Plaintiffs merely added six counts to the original pleading.[2]  [ECF Nos. 13-1; 20].  Defendants did not resist the motion to amend.  [ECF No. 15].[3]

"Amendment of pleadings in civil actions is governed by Rule 15(a)[.]"  *Beeck v. Aquaslide "N' Dive Corp.*, 562 F.2d 537, 539 (8th Cir. 1977); *see also*  Fed. R. Civ. P. 15(a)(2) ("In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires.").  There is no absolute right to amend, *Becker v. University of Nebraska at Omaha*, 191 F.3d 904, 908 (8th Cir. 1999), but Rule 15's "mandate is to be heeded."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  "Whether to grant a

---

[1] On January 29, 2015, Defendants Treynor Community School District ("the School District") and Tim Navara filed a pre-answer motion to dismiss ("School Motion") and supporting brief ("School Brief") [ECF Nos. 3; 3-1].  Plaintiffs resisted on February 12, 2015 ("Resistance") [ECF No. 5-1], and the School District and Navara replied on February 17, 2015 ("Reply") [ECF No. 6].
On February 18, 2015, Defendant Kevin Elwood joined the School Motion ("Elwood Motion") [ECF No. 8].
The School District and Navara then filed a second motion to dismiss and supporting brief ("Second School Brief") [ECF Nos. 21; 22], on April 28, 2015, which targeted newly added counts.  Plaintiffs resisted on May 29, 2015 ("Second Resistance") [ECF No. 31-1].
On May 11, 2015, Elwood joined the Second School Motion through his own second motion and brief  ("Second Elwood Brief") [ECF Nos. 28; 28-1].  He filed a reply on June 3, 2015, ("Elwood Reply") [ECF No. 32].

[2] The Court observes no changes to the factual allegations, but for Plaintiffs' use of the minor's full name in their amended pleading.

[3] Although Elwood did not join in the School District and Navara's notice of non-resistance to Plaintiffs' motion to amend, he subsequently communicated his assent via email to the chambers of the Honorable Helen C. Adams, United States Magistrate Judge assigned to this case.

motion for leave to amend is within the sound discretion of the court." *Becker*, 191 F.3d at 908. Seeing no justification to deny Plaintiffs' motion to amend,[4] the Court granted them leave to do so.[5]

Consequently, the Court construes Defendants' motions as now targeting Plaintiffs' First Amended Complaint. *See, e.g.*, *Tensor Grp., Inc. v. Global Web Sys., Inc.*, No. 96 C 4606, 1999 WL 617818, at *1 (N.D. Ill. Aug. 11, 1999) (treating the earlier motion to dismiss as being directed to the subsequent second amended complaint); *Holmes v. Nat'l Football League*, 939 F. Supp. 517, 523 n.7 (N.D. Tex. 1996) (reaching the same outcome); 6 Charles A. Wright et al., *Federal Practice & Procedure* § 1476 (3d ed. 2014) ("[D]efendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending. If some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading.").

### B. Factual Allegations

Plaintiffs allege the following facts in their First Amended Complaint, accepted by the Court as true. A.S., a minor by her father and mother, and next friends, Dan and Jann Strutzenberg; Dan Strutzenberg, individually; and Jann Strutzenberg, individually (collectively "Plaintiffs") seek relief against the School District; Navara, the high school principal; and Elwood, the superintendent and father of the assailant. As the superintendent, Elwood is responsible for administering the policies

---

[4] "Proper justification for denying such a motion includes: 'undue delay, bad faith[,] or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment.'" *Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 454 (8th Cir. 1998) (quoting *Foman*, 371 U.S. at 182).

[5] Judge Adams entered a text order to that end on April 24, 2015. [*See* ECF No. 16].

of the School District, including policies prohibiting sex discrimination, harassment, bullying, and assault. [First Am. Compl. ¶ 8].

On May 16, 2013, Kreighton Elwood, then a junior at the School District, sexually assaulted A.S., then a sophomore at the School District, on school grounds. [First Am. Compl. ¶¶ 8–10]. During the 2012–13 school year, and perhaps prior thereto, Kreighton engaged in a series of assaults on female students in the School District. [First Am. Compl. ¶ 8]. A.S. suffered bullying and harassment by other students related to her assault. [First Am. Compl. ¶ 11].

Kreighton's assaults were reported to Elwood—superintendent and Kreighton's father—and the School District administration. [First Am. Compl. ¶¶ 8, 11, 12]. Specifically, a teacher heard rumors of Kreighton hurting A.S. the day after the assault and informed Navara. [First Am. Compl. ¶ 11]. After A.S. told her parents about the assault in the following days, Jann reported the incident to both the building administrator Tim Larsen and Shana Elwood—another coworker and Kreighton's mother. [First Am. Compl. ¶ 12]. None of the reports resulted in any action by the School District, Navara, or Elwood. [First Am. Compl. ¶¶ 11, 12, 100, 107, 114].

Dan reported A.S.'s assault to the police. [First Am. Compl. ¶ 12]. Kreighton subsequently entered pleas of guilty to several charges, including the assault of A.S., in Pottawattamie County District Court. [First Am. Compl. ¶ 14].

Both Jann and Dan, A.S.'s parents, are employees of the School District. [First Am. Compl. ¶ 7]. Jann was not advised of her rights under the Family and Medical Leave Act, 19 U.S.C. § 2611 et seq. ("FMLA"), but had to attend medical appointments for A.S. following the assault. [First Am. Compl. ¶¶ 93, 94, 15]. Plaintiffs contend the School District retaliated against Jann for exercising her rights under the FMLA by failing to take action to keep others from creating a hostile

atmosphere surrounding Jann's taking leave to take A.S. to medical appointments.  [First Am. Compl. ¶ 95].  They further claim the School District and Navara deprived A.S. of participation in school activities and enjoyment of benefits of education.  [First Am. Compl. ¶ 102].  Finally, Plaintiffs allege retaliation against both Dan and Jann by Defendants.  [First Am. Compl. ¶¶ 101, 108, 115, 127, 133].

Plaintiffs seek emotional distress damages, compensation of all expenses and medical bills, punitive damages, lost wages and benefits due under FMLA, as well as attorney's fees, the costs of this action, and interest.

### C. Issues Before the Court

Plaintiffs raise twenty claims against Defendants.  In Counts I–III, they put forward Title IX claims against the School District, Navara, and Elwood, respectively.  In Counts IV–VI, Plaintiffs allege violations of 42 U.S.C. § 1983 against the School District, Navara, and Elwood, respectively. In Counts VII–IX, they claim violations of Iowa Code § 280.28 against each of the three Defendants. In Counts X–XII, Plaintiffs put forward negligence claims against the School District, Navara, and Elwood, respectively.  In Count XIII, they allege the School District negligently retained and supervised the superintendent.  In Count XIV, Plaintiffs list FMLA violations against the School District.  In Counts XV–XVII, Plaintiffs claim the School District, Navara, and Elwood violated the Iowa Civil Rights Act.  Finally, in Counts XVIII–XX, Plaintiffs raise Title VII claims against the School District, Navara, and Elwood, respectively.

Defendants seek dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure of some but not all claims in Plaintiffs' First Amended Complaint.  The School motions target Counts II, V, VII, VIII, X, XI, XIII, and XIX.  The Elwood motions target Counts III, VI, IX, XVII, and

XX.  None of the Defendants seek dismissal of Counts I, IV, XII, XIV–XVI, or XVIII, and the Court does not address those counts here.

## II. ANALYSIS

### A. Standard for Rule 12(b)(6) Dismissals

Federal law requires "only a short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Zayed v. Associated Bank, N.A.*, 779 F.3d 727, 732 (8th Cir. 2015); Fed. R. Civ. P. 8(a)(2).  Rule 12(b)(6) governs motions to dismiss for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (internal quotation marks omitted) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Twombly*, 550 U.S. at 570.  Though not a "probability requirement," the *Twobly / Iqbal* plausibility standard requires that plaintiff show that "success on the merits is more than a sheer possibility." *Braden*, 588 F.3d at 594 (internal citation and quotation marks omitted).  A claim meets the plausibility standard when the court can draw from its factual allegations a reasonable inference of defendant's liability for the alleged misconduct. *Iqbal*, 556 U.S. at 678.

In reviewing a claim for plausibility, courts rely on the following principles.  First, they take plaintiff's factual allegations as true but may set aside legal conclusions. *Braden*, 588 F.3d at 594 (citing *Iqbal*, 556 U.S. at 678).  Second, courts draw any reasonable inferences that may be drawn in favor of the non-movant.  *Qwest Commc'ns Co. v. Aventure Commc'ns Tech., LLC*, No. 4:07-CV-00078-JEG, 2015 WL 711154, at *51 (S.D. Iowa Feb. 17, 2015).  Next, they read the complaint as a whole, without viewing each allegation in isolation. *Braden*, 588 F.3d at 594 (citing

*Vila v. Inter–Am. Inv. Corp.*, 570 F.3d 274, 285 (D.C. Cir. 2009)).  Finally, courts draw on their judicial experience and common sense in evaluating a complaint in context.  *Id.* (citing *Iqbal*, 556 U.S. at 679).

### B. Title IX Counts

In Counts II and III, Plaintiffs contend Navara and Elwood committed Title IX violations. Navara and Elwood argue the claims against them in their official capacity[6] are duplicative of the claim against the School District in Count I and must fail.  [Reply at 1; Elwood Mot. at 1–2]. Defendants raise no other challenge to these counts.

### 1. Law Governing Title IX Claims

Under Title IX, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).[7]  The United States Court of Appeals for the Eighth Circuit ("Eighth Circuit") interprets Title IX to permit school liability for deliberate indifference to known acts of discrimination that occur under its control. *Plamp v. Mitchell Sch. Dist. No. 17-2*, 565 F.3d 450, 456 (8th Cir. 2009).  Liability extends to student-on-student sexual harassment: a school's deliberate indifference to known acts of such sexual harassment[8] can amount to an intentional violation of Title IX capable of supporting a private

---

[6] Plaintiffs concede Navara and Elwood cannot be liable in their individual capacities under Title IX.  [Resist. at 5 (citing *Cox v. Sugg*, 484 F.3d 1062, 1066 (8th Cir. 2007)].

[7] Parties appear to not dispute that the School District is federally-funded for Title IX purposes.

[8] Sexual harassment and sexual abuse of a student can constitute "discrimination" under Title IX.  *Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60 (1992); *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998).

damages action.  *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629,

646–47 (1999) ("We thus conclude that recipients of federal funding may be liable for subjecting

their students to discrimination where the recipient is deliberately indifferent to known acts of

student-on-student sexual harassment and the harasser is under the school's disciplinary authority."

(internal citation and quotation marks omitted));  *Doe v. Perry Cmty. Sch. Dist.*, 316 F. Supp. 2d

809, 832 (S.D. Iowa 2004) (citing *Franklin*, 503 U.S. at 75).

### 2. Does Duplication Educe Dismissal?

Navara and Elwood argue Counts II and III must be dismissed as duplicative of Count I, the

third Title IX claim against the School District itself.[9]  The issue before the Court thus is whether

a school official sued in his or her official capacity is entitled to a pre-answer dismissal from a Title

IX suit on the grounds that the claim against him or her is duplicative of the claim against the school

district.  The Eighth Circuit has not expressed its opinion here.  The parties do not brief the

duplication matter further.

---

[9] For support, Defendants rely on the *Will v. Michigan Dept. of State Police* line of cases. *See* 491 U.S. 58, 71 (1989) (in § 1983 context, ruling that a suit against a state official in his or her official capacity is a suit against the official's office and is thus no different from one against the state itself); *Shepard v. Wapello Cnty., Iowa*, 250 F. Supp. 2d 1112, 1120 n.5 (S.D. Iowa 2003) (in § 1983 context, noting merely that "naming the County and [a sheriff] in his official capacity . . . is duplicative" but not taking further action at summary judgment stage (citing *Doe v. Washington Cnty.*, 150 F.3d 920, 923 (8th Cir. 1998) (where the jury found liable the county but not the sheriff in his official capacity in a § 1983 detainee suit, naming both parties as defendants was merely duplicative))).  These are not Title IX cases. Defendants fail to specify why this § 1983 law should extend to the Title IX context, and the Court declines to so find.

Duplication can support dismissal, according to several non-controlling Title IX cases the Court located.[10]  Nothing appears to require one, however.  The fact that a suit against a defendant in his or her official capacity generally represents another way of pleading an action against the entity itself does not bar plaintiffs from bringing Title IX claims against the officials in their official capacity in addition to the entity.  *See, e.g.*, *Hurd v. Delaware State Univ.*, C.A. No. 07-117-MPT, 2008 WL 4369983, at *3 (D. Del. Sept. 25, 2008) (denying defendant's motion for summary judgment and the argument that the official capacity suit is merely duplicative).  Plaintiffs may want to retain the right to shape their suit—and perhaps focus the attention of a later jury—despite the fact the inclusion of the official capacity claim adds nothing.  *Id.*[11]

---

[10] *See Shrum v. Kluck*, 85 F. Supp. 2d 950, 956 n.4 (D. Neb. 2000) (at summary judgment stage, disposing of case on other grounds and noting that "naming of [superintendent] as a defendant . . . is duplicative, since a suit against him in his official capacity is equivalent to a suit against [the school district]."), *aff'd sub nom. Shrum ex rel. Kelly v. Kluck*, 249 F.3d 773 (8th Cir. 2001); *see also Braden v. Mountain Home Sch. Dist.*, 903 F. Supp. 2d 729, 738 (W.D. Ark. 2012) ("Neither does a remedy exist against school officials in their official capacities [under Title IX], as such claims are redundant to claims against the school district." (citing *Will*, 491 U.S. at 71)).

[11] *See also* 15A Charles A. Wright et al., *Federal Practice and Procedure* § 3914.10 n.47.9 (2d ed.) ("The plaintiff [in *Hartley v. Parnell*, 193 F.3d 1263, 1265 (11th Cir. 1999),] also asserted a claim under Title IX of the Education Amendments of 1972; it was resolved by ruling that individual school officials may not be held liable under Title IX.  An official-capacity claim might survive this ruling.").

Duplication does not dictate dismissal: so inform other cases located by the Court that express or imply proper retention in the suit of school officials sued in their official capacities under Title IX. *See, e.g.*, *Franklin*, 503 U.S. 60 (allowing a Title IX suit against a school and an official in his official capacity to proceed); *Kinman v. Omaha Pub. Sch. Dist.*, 171 F.3d 607, 609 (8th Cir. 1999) (where a trial was held on the Title IX claim and the jury returned a verdict against defendants on the official capacity claim, the Eighth Circuit reversed and entered judgment *on the merits* for the district and the officials);[12] *Burrow By & Through Burrow v. Postville Cmty. Sch. Dist.*, 929 F. Supp. 1193, 1207 (N.D. Iowa 1996) (Melloy, C.J.) (denying summary judgment to the school district and, as a result, to school officials in their official capacities).

Without authority to the contrary, the Court finds Plaintiffs' suit under Title IX against school officials in their official capacity may proceed, despite a duplicative count against the School District itself.  Past the redundancy argument, Defendants raise no further defect, factual or otherwise, with Plaintiffs' allegations in Counts II and III.  The Court thus DENIES their Motions as to Counts II and III.

---

[12] In *Kinman*, the Eighth Circuit relied on the Seventh Circuit's *Smith* decision for the proposition that "[s]uits against school officials in their official capacity are treated as suits against the school district itself." 171 F.3d at 609 n.1 (citing *Smith v. Metro. Sch. Dist. Perry Twp.*, 128 F.3d 1014, 1021 n.3 (7th Cir. 1997), *cert. denied*, 524 U.S. 951 (1998)).  It went no further than that and, in fact, reviewed the merits of the case against the officials in their official capacity.

Notably, in *Smith*, the Seventh Circuit went a step further than most courts and analyzed whether school officials in their official capacity had administrative control over the high school pursuant to state law. 128 F.3d at 1020 (ultimately dismissing the principal and assistant principal from suit when, under Indiana law, they do not hold control over program or activities, as demanded by Title IX liability).

The parties here do not brief whether the Eighth Circuit adopted the Seventh's administrative control standard, or whether superintendents and principals can be considered administrators under Iowa law.  Consequently the Court does not reach these issues.

### C. Section 1983 Counts

In Counts V and VI, Plaintiffs allege Navara and Elwood committed § 1983 violations. Navara and Elwood construe the § 1983 claims to be based on alleged violations of Title IX. [School Br. at 4; Elwood Mot. at 2]. Navara also challenges the claim only insofar as it targets him in his individual capacity. [School Br. at 4]. Elwood, in turn, challenges the claim against him in both his individual capacity and as duplicative in his official capacity. [Elwood Mot. at 2]. Plaintiffs resist, arguing the § 1983 argument is based not on Title IX but, instead, on a constitutional violation of A.S.'s right to due process protection of her liberty and property interests. [Resist. at 7–8]. They further posit the claims survive against the named Defendants in both their individual and official capacities.

Plaintiffs do not explain their position further: it is unclear whether they rely on a procedural due process violation [*see, e.g.*, Resist. at 7–8 (relying on a procedural due process case)] or a substantive due process violation [*see, e.g.*, First Am. Compl. at Counts IV–VI (outlining what appear to be legal elements of a substantive due process claim)]. Navara does not address either argument in his Motion or Reply, apparently continuing to assert Plaintiffs must base their § 1983 violation only on Title IX; Elwood footnotes Plaintiffs' failure to plead sufficient facts for a substantive due process claim [*see* Elwood Mot. at 2 n.1].

Because Plaintiffs raise procedural due process arguments in their Resistance [Resist. at 7–8] and substantive due process allegations in their First Amended Complaint, [First Am. Compl. ¶¶ 42–43, 47–48, 52–53], the Court construes the relevant counts to cover both. In other words, out of an abundance of caution and without further guidance from the parties, the Court addresses

Plaintiffs' § 1983 claims as based on violations of both substantive and procedural due process. Still, neither claim survives.

### 1. Procedural Due Process Violation

The Court first takes up procedural due process, an argument Plaintiffs appear to raise in their Resistance. [Resist. at 7–8 (citing *Goss*, 419 U.S. at 574–75 (a procedural due process case))].

Generally, one whose constitutional rights are violated under the color of state law has a remedy under 42 U.S.C. § 1983. For a successful § 1983 claim, a plaintiff must show (1) he or she has a liberty or property interest that the state interfered with and (2) that the procedures accompanying that deprivation were insufficient. *Kentucky Dept. of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). The Court does not reach the second element of the test because Plaintiffs fail their burden on the first: they have not established that the facts alleged amount to deprivation of the relevant interests.

To begin with, Plaintiffs can likely establish the protected liberty and property interests at stake in this case. The Due Process Clause of the Fourteenth Amendment to the United States Constitution protects one's property right in education once a state mandates and provides for the right to education. *See Goss*, 419 U.S. at 574–75 (where the state school system mandated children's attendance, the state was "constrained to recognize a student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause"); U.S. Const. amend. XIV, § 1 (providing that no state shall "deprive any person of life, liberty, or property, without due process of law").[13] *Goss* also affirmed the courts' recognition of students'

_____

[13] Parties do not detail why this case is or is not governed by *Goss* and its progeny. Although Plaintiffs assume that it is, they do not brief the threshold inquiry of Iowa's public education mandate. The Court nevertheless finds *Goss* controlling. As in *Goss*, children in Iowa have a

liberty interest in good name, reputation, honor, and integrity.  419 U.S. at 574 ("The Due Process

Clause also forbids arbitrary deprivations of liberty.  'Where a person's good name, reputation,

honor, or integrity is at stake because of what the government is doing to him [or her],' the minimal

requirements of the Clause must be satisfied." (quoting *Wisconsin v. Constantineau*, 400 U.S. 433,

437 (1971))).  The Court thus finds that A.S.'s liberty and property interests could have been

implicated in this case.

Plaintiffs provide insufficient support for a showing of deprivation of those rights, however.

They start by alleging deprivations of A.S.'s liberty interest in reputation and a property interest in

education.  Plaintiffs contend A.S. was deprived of both when the school officials failed to take

remedial action after A.S. (1) was harassed by classmates, having been accused of having sex with

Kreighton, and (2) had to face continued contact with him.  According to Plaintiffs, the school

officials' failure to take any remedial action deprived A.S. of educational benefit and opportunities

and was "tantamount to suspension from school."  [Resist. at 8].  Plaintiffs have not pleaded any

facts to support a conclusion of suspension, however.  Based on the facts alleged, A.S. did not stop

---

protected property interest in public education.  *See* 419 U.S. at 573–74 ("Although Ohio may not
be constitutionally obligated to establish and maintain a public school system, it has nevertheless
done so and has required its children to attend."); *J.K. ex rel. Kaplan v. Minneapolis Pub. Sch.
(Special Sch. Dist. No. 1)*, 849 F. Supp. 2d 865, 871 (D. Minn. 2011) (where state law required
children between ages of seven and sixteen to attend school, finding that, "because Minnesota
guarantees an education to students such as J.K., his property interest in a public education is
protected by the Fourteenth Amendment's Due Process Clause"); Iowa Code Chapter 299
(mandating compulsory education for children under 16); *see also King v. State*, 818 N.W.2d 1, 24
(Iowa 2012) ("[W]e recognized that students have a due process right to an adequate education,
although we did not characterize it as a fundamental right." (citation omitted)).  Because the parties
do not brief whether the 16-year-of-age specification in the state statute is affected by A.S.'s being
only a sophomore at the time the alleged events took place, the Court does not review the issue.

attending school[14] and did not stop receiving the education to which she is entitled.  Thus, the Court construes her claim to be that a school official's failure to take action in light of peer verbal and physical harassment is, in a sense, constructive suspension from school and thus a deprivation of her property interest in education.

Plaintiffs cite no law, from anywhere, that holds that a school official's failure to take action in light of student "scrutiny" and failure to remove the assailant from classes with A.S., or to otherwise "protect her from contact with him," is equivalent to a suspension from school and sufficient for a claim of a constitutional *deprivation* of one's property interest in education and liberty interest in reputation.  Without any authority for the leap from (A) a failure to accommodate by addressing student harassment and interaction with an accused assailant, to (B) suspension, the Court declines to let the claims proceed.

Plaintiffs have not shown that, under any controlling law, these facts are sufficient to state a § 1983 claim based on a procedural due process violation.  Defendants' Motions on Counts V and VI are GRANTED insofar as Plaintiffs relied on procedural due process.

## 2. Substantive Due Process Violation

The Court next reviews whether Counts V and VI survive as based on allegations of substantive due process violations—an argument Plaintiffs appear to have intended to raise by virtue of their First Amended Complaint's language.  Plaintiffs discuss Defendants' deliberate indifference for the health, safety, and education of A.S. and others, as demonstrated by their failure to take any

---

[14] Plaintiffs contend A.S. "has been denied the right to attend school, and class, including band practice, without having to endure verbal and physical harassment, physical assault, bullying[,] and direct contact and physical proximity to Kreighton Elwood."  [First Am. Compl. ¶ 20].

remedial action after the assault reports.  [First Am. Compl. ¶¶ 42–43, 47–48, 52–53].  To the extent Plaintiffs argue a duty to protect existed in this case, their contention fails.

Generally, a student's right to due process is not implicated when school officials fail to protect him or her from private acts of violence.  *See DeShaney v. Winnebago Cnty. Dept. of Soc. Servs.*, 489 U.S. 189, 200 (1989) (finding that a State's failure to protect an individual against private violence generally does not constitute a violation of the Due Process Clause).  That remains true in cases of student-on-student assault.  *Dorothy J. v. Little Rock Sch. Dist.*, 7 F.3d 729, 732 (8th Cir.1993) (public school had no constitutional duty to protect a mentally retarded student who was raped in school by a student known to be violent and sexually assaultive because "state-mandated school attendance does not entail so restrictive a custodial relationship as to impose upon the State the same duty to protect it owes to prison inmates").  Because this is a case of private student-on-student violence, Plaintiffs are not entitled to relief.

Plaintiffs have not stated a successful § 1983 claim based on a substantive due process violation.  Defendants' Motions on Counts V and VI are therefore GRANTED insofar as Plaintiffs relied on substantive due process.

### D. Iowa Code § 280.28 Counts

In Counts VII–IX, Plaintiffs allege the School District, Navara, and Elwood violated Iowa Code § 280.28, the state's prohibition on harassment and bullying in schools.  In seeking dismissal, Defendants posit that section does not create a private right of action.  [School Br. at 5; Elwood Mot. at 2].

1. Availability of Claims Under § 280.28

Iowa Code § 280.28 outlines the states's policy "that school employees, volunteers, and students in Iowa schools shall not engage in harassing or bullying behavior." Iowa Code § 280.28(1).  The section details anti-harassment and anti-bullying programs for schools to adopt and encourages relevant programming.  Iowa Code § 280.28(3), (4).  It does not express any right of action by a victim, noting merely that existing remedies are not affected by it. Iowa Code § 280.28(8) ("This section shall not be construed to preclude a victim from seeking administrative or legal remedies under any applicable provision of law.").  The threshold inquiry before the Court, therefore, is whether § 280.28 implies a cause of action.

The Court was unable to locate any electronically published case that interprets § 280.28 or speaks to whether a private cause of action exists thereunder.  Plaintiffs similarly put forward nothing on point in their Resistance.  Elwood, however, provided the Court with a copy of *Beedon ex rel. Reid v. West Des Moines Cmty. Sch. Dist.*, No. LACL 123745, a relevant order from the Iowa District Court for Polk County.  There, Judge Douglas F. Staskal of the Fifth Judicial District of Iowa concluded § 280.28 does not create a private cause of action.  [Elwood Mot. at 6 (page 3 of the attached court order)].  Judge Staskal applied the state's four-factor test for finding an implied cause of action[15] in concluding the provision does not imply one.  *Id.*  (dismissing a similar claim in that case).  Plaintiffs largely ignore this authority.

---

[15] *See, e.g.*, *Sanford v. Manternach*, 601 N.W.2d 360, 371 (Iowa 1999).

2. Dismissal of Counts VII–IX

Seeing no reason to disagree with the sound judgment of the state district court, the Court follows its finding that Iowa Code § 280.28 affords no cause of action.  Plaintiffs' claims in Counts VII, VIII, and IX thus fail.  Defendants' motions are GRANTED on these counts.

E. *Negligence and Negligent Retention and Supervision Counts*

In Counts X and XI, Plaintiffs raise allegations of negligence against the School District and Navara.  In Count XIII, they add a claim of negligent retention and supervision of Elwood against the School District.  The School Defendants seek dismissal of these negligence-based claims, arguing Title IX preempts them.  [School Br. at 8–9].  They cite wrongful discharge caselaw from non-controlling jurisdictions for the proposition that Title IX precludes Plaintiffs' negligence claims in the education context, too.  Their argument by analogy is unpersuasive.

The Court refuses to find Title IX's preemption of the negligence claims here.  First, Defendants have not furnished a single peer harassment case holding the Court must do so.[16] Second, preemption in student-on-student assault cases makes little sense when negligence is not

---

[16] Whether federal law preempts a state action is a question of congressional intent, one that the parties do not address.  Consequently, neither does the Court.

the basis for liability under Title IX.[17]   Finally, the Court's decision is informed by other courts letting both claims move forward in parallel, albeit not deciding the preemption issue expressly.[18]

Because the Court does not find Title IX preempts Plaintiffs' negligence-based claims in Counts X, XI, and XIII, the School Defendants' Motion is DENIED as to those counts.

### F. The Iowa Civil Rights Act Count

In Count XVII, Plaintiffs allege a violation of the Iowa Civil Rights Act ("ICRA") by Elwood. [First Am. Compl. at 17–18 (citing Iowa Code Chapter 216 - Harassment and Retaliation)]. Elwood moves to dismiss, contending § 216.9—the section he assumes Plaintiffs rely on—does not impose personal liability for alleged discrimination in education as to A.S.  [Second Elwood Br. at 3–6].  Elwood further argues that, to the extent Plaintiffs attempt to plead retaliation and hostile work environment as to Jann and Dan under ICRA, they failed to plead sufficient facts to support such claims.  [Second Elwood Br. at 4 n.1].  For the reasons outlined below, neither claim survives as part of Count XVII.

---

[17] *See Davis*, 526 U.S. at 646–47 (applying the deliberate indifference standard to known acts of peer sexual harassment in Title IX cases); *Perry Cmty. Sch. Dist.*, 316 F. Supp. 2d at 833 ("A school district cannot be held liable under Title IX for its negligent failure to remedy the sexually harassing behavior by a student's peers despite its knowledge of such behavior." (internal citation and quotation marks omitted));  *see also City of Canton v. Harris*, 489 U.S. 378, 388 n. 7(1989) (in the context of municipal liability, distinguishing gross negligence from deliberate indifference); *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (in the context of a *Bivens* suit, noting that "deliberate indifference entails something more than mere negligence" and lies in-between negligence and purpose or knowledge).

[18] *See, e.g.*, *Bruning ex rel. Bruning v. Carroll Cmty. Sch. Dist.*, 486 F. Supp. 2d 892, 923 (N.D. Iowa 2007) (denying summary judgment on Title IX and negligence claims in the context of peer harassment).

### 1. Dismissal of the Employment Claims Under ICRA in Count XVII

As a preliminary matter, the Court finds persuasive Elwood's arguments as to retaliation and hostile work environment. The First Amended Complaint contains nothing more than conclusory allegations of hostile work environment and retaliation against Dan and Jann. Without sufficient factual pleadings, the Court sets aside Plaintiffs' legal conclusions. *Braden*, 588 F.3d at 594.

In Iowa, courts generally analyze ICRA hostile work environment claims under the same legal framework as Title VII claims. *Stoddard v. BE & K, Inc.*, 993 F. Supp. 2d 991, 999 (S.D. Iowa 2014) (citing *Boyle v. Alum-Line, Inc.*, 710 N.W.2d 741, 748 (Iowa 2006)). A prima facie showing of hostile work environment under Title VII involves proof that plaintiff "(1) was a member of a protected group; (2) . . . was subject to unwelcome sexual harassment; (3) the harassment was based on sex; and (4) the harassment affected a term, condition, or privilege of her employment." *Boyle*, 710 N.W.2d at 748 (citing *Beard v. Flying J, Inc.*, 266 F.3d 792, 797–98 (8th Cir.2001)).

"Much like claims for hostile work environment, claims asserting retaliation under the ICRA are generally analyzed under the same legal framework as Title VII retaliation claims." *Stoddard*, 993 F. Supp. 2d at 1002 (citing *Estate of Harris v. Papa John's Pizza*, 679 N.W.2d 673, 677–78 (Iowa 2004) ("The ICRA was modeled after Title VII, and therefore we have consistently employed federal analysis when interpreting the ICRA.")). A plaintiff alleging retaliation, therefore, faces the following burden of proof: (1) that he or she engaged in a statutorily protected activity under Title VII, (2) that she suffered an adverse employment action, and (3) that there was a causal connection between the two. *Id.* at 1002–03 (citing *Gilbert v. Des Moines Area Cmty. Coll.*, 495 F.3d 906, 917 (8th Cir. 2007)).

Even setting aside the problems the Court sees with Plaintiffs basing these claims on their "association" with their daughter following her sexual assault, the Court cannot find sufficient facts in the First Amended Complaint to support the retaliation and hostile work environment claims. Specifically, Plaintiffs do not show in what way they suffered harassment, *cf. Boyle*, 710 N.W.2d at 748, or what kind of adverse employment action they incurred, *cf. Stoddard*, 993 F. Supp. 2d at 1002–03. Mindful of the plausibility standard at the Rule 12(b)(6) stage, the Court cannot let these claims go forward. *Braden*, 588 F.3d at 594 (noting that the *Twobly / Iqbal* plausibility standard requires that plaintiff show that "success on the merits is more than a sheer possibility"); *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1129 (8th Cir. 2012) ("[T]he question is whether [plaintiff] has adequately asserted facts (as contrasted with naked legal conclusions) to support his claims."). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (internal citation and quotation marks omitted). In this case, the Court sees no pleaded *facts*, as opposed to legal conclusions, on which to consider plausibility.

For the reasons outlined in Elwood's briefing [Second Elwood Br. at 4 n.1; Elwood Reply at 3], Plaintiffs' employment-based claims contained in Count XVII are dismissed. The Second Elwood Motion is GRANTED in this respect.

### 2. Dismissal of the Discrimination in Education Claim Under ICRA in Count XVII

The Court now turns to the consideration of A.S.'s education-based claim in Count XVII. As noted earlier, Elwood assumes Plaintiffs rely on Iowa Code § 216.9 and argues it does not impose personal liability for alleged discrimination in education. [Second Elwood Br. at 3–6].

Plaintiffs resist, contending they have pleaded violations of some or all of Iowa Code Chapter 216. [Second Resist. at 8].  The Court declines to adopt Plaintiffs' reading of the law, as outlined below.

Plaintiffs' Second Resistance, like their First Amended Complaint, commingles and conflates claims of and arguments about discrimination in *education* and *employment* under ICRA.  Clear delineation of the two kinds of claims remains imperative.

Elwood targets § 216.9 with his Second Motion.  That section covers unfair or discriminatory practices by *educational institutions*.[19]   Plaintiffs argue Elwood "blatantly misstates and mischaracterizes the record" [Second Resist. at 7] by suggesting Count XVII is based on an alleged violation of § 216.9.  They argue, instead, they have successfully pleaded a violation of ICRA Chapter 216, "not limited to a specific section."  [Second Resist. at 7].  Plaintiffs' position is perplexing: if § 216.9 does not apply, it is unclear what does.

The Court has already ruled that Plaintiffs' *employment* claims do not survive the Rule 12(b)(6) stage of this suit; consequently, Plaintiffs' arguments as to Elwood's individual liability under § 216.6, the unfair *employment* practices section, fail.  That disposes of the majority of Plaintiffs' argument.  [*See* Second Resist. at 8–10].

---

[19] Section 216.9(1) provides, in relevant part: "It is an unfair or discriminatory practice for any educational institution to discriminate on the basis of race, creed, color, sex, sexual orientation, gender identity, national origin, religion, or disability in any program or activity." Iowa Code § 216.9(1).

Plaintiffs also mention § 216.11, the section that covers discrimination-related aiding, abetting, or retaliation.[20]   To the extent Plaintiffs seek to hold Elwood individually liable under § 216.11 for the School District's alleged *education*-related violations of § 216.9,[21] that argument was previously denied by another judge of this Court.  *See Murphy v. Pleasantville Sch. Dist.*, No. CIV. 400CV10010, 2000 WL 33361989, at *2–3 (S.D. Iowa May 4, 2000) (not reported) (Longstaff, J.) (refusing to extend individual liability under ICRA and its § 216.11 for alleged discrimination in *education*); *see also Torres v. N. Fayette Cmty. Sch. Dist.*, No. 07-CV-2069-LRR, 2008 WL 1819424, at *5 (N.D. Iowa Apr. 22, 2008) (unpublished) (Reade, C.J.) (adopting this District's reasoning in *Murphy*).[22]   This Court is unaware of any decision by Iowa state courts deciding this question differently—and Plaintiffs provide none.   Consequently, the Court declines to adopt

---

[20] Section 216.11(1) provides it is an unfair or discriminatory practice for "[a]ny person to intentionally aid, abet, compel, or coerce another person to engage in any of the practices declared unfair or discriminatory by this chapter."  Iowa Code § 216.11(1).

[21] [Second Resist. at 8–10].

[22] The *Torres* Court wrote,

> The court finds the reasoning in *Murphy* to be sound.  Although the Iowa General Assembly elected to permit a cause of action against individuals for discrimination in *employment* by including the word "person" in the operative statute, it did not do so for discrimination in *education*. The court is unwilling to end-run this legislative intent by allowing individual liability for discrimination in *education* pursuant to the "aid" and "abet" language in section 216.11(1).
>
> In light of the foregoing, the court shall dismiss Plaintiffs' Iowa Code chapter 216 claim against the individually named Defendants in their individual capacity.

*Torres*, 2008 WL 1819424, at *5 (emphasis added).

Plaintiffs' argument as to Elwood's individual liability for any education discrimination alleged against the School District.

The Second Elwood Motion is GRANTED as to the remainder of Count XVII.

### G. Civil Rights Act of 1964 Counts

In Counts XIX and XX, Plaintiffs allege violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., against Navara and Elwood.  Navara and Elwood move to dismiss based on unavailability of individual liability under Title VII [Second School Br. at 1; Second Elwood Br. at 2].  Plaintiffs do not resist.  [Second Resist. at 2].[23]  Consequently, Plaintiffs' claims in Counts XIX and XX are dismissed.  Defendants' motions are GRANTED in relevant part.

### H. Punitive Damages

Finally, the School District asks the Court to deny Plaintiffs punitive damages against it. [School Br. at 9].  Plaintiffs concede the School District's immunity to punitive damages.  [Second Resist. at 12].  Consequently, the School Defendants' Motion is GRANTED in this respect.

### III. CONCLUSION

For the foregoing reasons, Defendants' motions [ECF Nos. 3; 8; 21; 28] are GRANTED in part and DENIED in part as follows.

---

[23] Plaintiffs resist the Second Elwood Motion.  They specify they resist it insofar as it addresses Count XVII.  In light of Plaintiffs' concession as to Count XIX and the School Defendants' Second Motion, the Court understands Plaintiffs to concede the same for Count XX and Elwood's Second Motion.  Because claims in Counts XIX and XX are, in relevant part, identical allegations of individual liability under Title VII raised against Navara and Elwood, the Court believes Plaintiffs intended to extend their concession to both counts.  Additionally, the Court notes Defendants raised the issue of Navara and Elwood's liability in their individual and official capacities.  Plaintiffs' concession thus applies to both.

**The School Defendants' first Motion to Dismiss [ECF No 3]** is GRANTED in part and DENIED in part.  The motion is GRANTED as to Count V (§ 1983 against Navara), Count VII (Iowa Code § 280.28 against the School District), Count VIII (Iowa Code § 280.28 against Navara), and punitive damages against the School District.  The motion is DENIED as to Count II (Title IX against Navara), Count X (negligence against the School District), Count XI (negligence against Navara), and Count XIII (negligent retention and supervision against the School District).

**The first Elwood Motion [ECF No. 8]** is also GRANTED in part and DENIED in part.  The motion is GRANTED as to Count VI (§ 1983 against Elwood) and Count IX (Iowa Code § 280.28 against Elwood).  The motion is DENIED as to Count III (Title IX against Elwood).

**The School Defendants' second Motion to Dismiss [ECF No. 21]** is GRANTED in its entirety as to Count XIX (Title VII against Navara).

**The second Elwood Motion [ECF No. 28]** is also GRANTED in its entirety as to Count XVII (Iowa Code Chapter 216 against Elwood) and Count XX (Title VII against Elwood).

In other words, Counts II, III, X, XI, and XIII survive the current motions.  Counts I, IV, XII, XIV, XV, XVI, and XVIII were unaffected by them.  Counts V through IX, XVII, and XIX through XX are dismissed.

IT IS SO ORDERED.

Dated this 23rd day of July, 2015.

_Stephanie M. Rose_

_____

STEPHANIE M. ROSE, JUDGE
UNITED STATES DISTRICT COURT